THE STATE OF OHIO, APPELLEE, *v.* THEISEN, APPELLANT.

(No. 630—Decided April 21, 1952.)

*Mr. Herbert R. Freeman,* prosecuting attorney, for appellee.

*Messrs. Miller & Miller,* for appellant.

FESS, J. This is an appeal on questions of law from an order committing the defendant to the Lima State Hospital for examination and report for a period of not more than sixty days, in conformity with Section 13451-20, General Code, after conviction of the offense

of improper exposure in violation of Section 12423-1, General Code. Pending the appeal, on application of the defendant, a judge of this court suspended the order of commitment and ordered the defendant released under the bond heretofore filed in the Common Pleas Court.

The state moves to dismiss the appeal on the ground that it is not taken from a judgment or final order, or after sentence and judgment.

The Supreme Court has recently reiterated that Section 6 of Article IV of the Constitution as amended is the sole source of jurisdiction of the Court of Appeals, and that such jurisdiction may not be enlarged by act of the General Assembly. *Green* v. *Acacia Mutual Life Ins. Co.*, 156 Ohio St., 1, 100 N. E. (2d), 211. Cf. *Hoffman* v. *Knollman*, 135 Ohio St., 170, 20 N. E. (2d), 221. The opinion in the *Green case, supra,* at page 8, indicates that although the General Assembly may legislate as to the jurisdiction to review, it can not enlarge that jurisdiction with reference to anything except judgments or final orders. Therefore, "judgments or final orders" as used in the Constitution are what the Supreme Court says they are. Under the 1912 amendment, the term, judgments, was construed to include final orders. In 1922, in *Chandler & Taylor Co.* v. *Southern Pacific Co.*, 104 Ohio St., 188, 135 N. E., 620, the Supreme Court held that the term, "judgments," comprehends all decrees and final orders rendered by a court of competent jurisdiction, which determine the rights of the parties affected thereby. In reaching its conclusion that final orders were included in the term judgments, the court referred to the fact that prior to the adoption of the 1912 amendment the Legislature had specifically defined the terms, "judgment" and "final order." Prior to the adoption of the amendment, Section 11582, General Code, defined a judgment to be "the final determination of the rights

of the parties in action.'' Section 12258, General Code, defined a final order to be one (a) affecting a substantial right in an action, when in effect it determines the action and prevents a ''judgment,'' or (b) ''an order affecting a substantial right'' made either in a special proceeding or upon a summary application in an action after judgment. The court thereupon construed the term judgment to include final orders as defined in former Section 12258, General Code. It will be noted that Section 12223-2, General Code, defining a final order, except the part relating to overruling a motion for a new trial, comports with the decision of the Supreme Court in the *Chandler case.* That decision of course relates to civil cases, but the same reasoning should be applied with respect to the jurisdiction of the Court of Appeals in criminal cases. In other words, the terms, judgments and final orders, should be construed to mean those orders which were regarded as judgments and final orders prior to the adoption of the 1912 amendment.

However, an appeal from a judgment of conviction is not a matter of absolute right independent of constitutional or statutory provisions allowing such appeal. It is wholly within the discretion of the state to allow or not to allow such a review, and it may be granted on such terms and conditions as to the Legislature seems proper. *State* v. *Edwards,* 157 Ohio St., 175, 105 N. E. (2d), 259; *Luff* v. *State,* 117 Ohio St., 102, 157 N. E., 388; *Wagner* v. *State,* 42 Ohio St., 537.

Section 13459-1, General Code, provides that in criminal cases a judgment or final order of a court or officer inferior to the Court of Appeals may be reviewed in that court. Section 13459-4, General Code, provides that such appeal, unless otherwise provided, may be filed within thirty days after sentence and judgment. Ordinarily, of course, the appeal is taken upon the journalization of the sentence.

*State* v. *Clark,* 61 Ohio App., 156, 22 N. E. (2d), 458, holds that appeal in criminal cases does not lie from final orders but from judgments only, and that orders overruling a defendant's motions for directed verdict and judgment in his favor are not "judgments" within the meaning of Section 6, Article IV of the Constitution. The opinion recognizes that in civil cases the overruling of motions for judgment notwithstanding a verdict and to direct the jury to return a verdict for a defendant are final orders, but states:

"We have not found any cases in which a similar holding has been made as to criminal cases but on the contrary have found that it has always been the rule in this state that error proceedings do not lie in a criminal case before final judgment in the case. *Inskeep* v. *State,* 35 Ohio St., 482; *Kinsley* v. *State,* 3 Ohio St., 508; *Cochrane* v. *State,* 30 Ohio St., 61. And the various criminal codes of this state, from the beginning, have never provided otherwise."

The court then follows the reasoning in the *Chandler case* and holds that since the remedial procedure in effect prior to 1912 did not embrace the review of final orders before final judgment and sentence, orders of the character from which the appeal was taken do not constitute "judgments."

The *Clark case* has been followed and approved in *State* v. *Minniear,* 60 Ohio Law Abs., 417, 101 N. E. (2d), 786, holding that an order overruling a motion for a new trial and also overruling a motion for judgment is not a final order in a criminal case. Cf. *State* v. *Feeser,* 27 Ohio Law Abs., 306.

In *State* v. *Norman,* 80 Ohio App., 510, 77 N. E. (2d), 76, the court holds that an order sustaining a demurrer to a plea of former jeopardy is not a judgment or final order, citing *Whitelock* v. *State,* 21 Ohio Law Abs., 393 (Appeal dismissed, *State* v. *Whitelock,* 131 Ohio

St., 332, 2 N. E. [2d], 777), and *State* v. *Smith*, 135 Ohio St., 292, 20 N. E. (2d), 718, also relating to interlocutory orders.

Although the General Assembly may not enlarge the jurisdiction of the Court of Appeals, it may nevertheless enact legislation which affects substantial rights such as, for example, the Mental Offenders Act. Sections 13451-19 to 13451-23, General Code. Under that act, after conviction and before sentence, the trial court must refer for examination all persons convicted of certain offenses. Section 13451-20, in specific terms, provides that an order of indefinite commitment shall constitute a final order; that the provisions of law relating to motions for new trial, bail and appeal on questions of law shall be applicable to such cases; and that any finding under the act that any person is mentally ill, a mentally deficient offender, or a psychopathic offender shall constitute a final order. If this provision should be construed to include orders interlocutory in character, it would be violative of the Constitution.

The order of reference made after conviction and before sentence is incident to the final imposition of sentence and is an indirect affirmance and recognition of the conviction. It is a part and parcel of the final sentence and in effect is a preliminary sentence. The order of commitment deprives the defendant of his liberty in the same manner, if not to the extent, as in the case of final sentence and judgment. The order is a judgment having the attributes of a sentence. If the defendant was erroneously tried and convicted, he is entitled to a new trial or possibly a discharge. As revealed in *State* v. *Johannsen* (unreported), this day decided, unless the defendant can prevail upon the trial judge to withhold ruling upon his motion for new trial until after his return from Lima, his right to ap-

peal is lost, since he must file his bill of exceptions within thirty days after the motion for new trial is overruled.

Many years ago, in *Dobbins* v. *State,* 14 Ohio St., 493, 503, Judge Ranney said:

"How far, and in what cases, the orders and judgments of an inferior court may be reviewed * * * must depend upon the particular organization of each judicial system, and the statutory powers conferred upon the appellate tribunals to entertain such a proceeding. In the judicial system of the United States, no writ of error in criminal cases has yet been provided; and this may be the case in some of the states. But in this state, it is so emphatically otherwise, that we are not only bound to review every order and judgment of the court, which may have affected injuriously the legal rights of the accused, but also the facts, whether found by the court or the jury, upon which such orders or judgments are founded."

Only one similar case has come to our attention. In *State* v. *McPherson,* 151 Ohio St., 275, 85 N. E. (2d), 295, it appears that an appeal was taken from the order of commitment challenging the constitutionality of the act. Pending the appeal, the defendant submitted to the examination and the question of the commitment became moot and the appeal was dismissed. An examination of the record in that case reveals that the defendant was convicted of sodomy and after the verdict filed motions for arrest of judgment and for a new trial, neither of which motions were acted upon. Journal entry of the verdict was signed by the trial judge, in which entry the defendant was released on bond pending further proceedings. Shortly thereafter, by journal entry, the reference for examination was made. In addition to challenging the constitutionality of the act, the defendant assigned numerous errors occurring at the trial. In its unreported opinion, the

court confined its discussion to the constitutional question, and after sustaining the act merely concluded that the failure of the trial court to pass on the motions was not prejudicial error, and that having examined all other claimed errors, found same nonprejudicial. The finality of the order was not raised or considered in the Court of Appeals or the Supreme Court, notwithstanding the fact that the state's motion to dismiss the appeal as of right was granted and defendant's motion for leave to appeal was allowed. If the commitment was not a judgment or final order, the appeal would have been dismissed, *sua sponte,* on that ground rather than as a moot question.

In view of these considerations, we conclude that the order of commitment was a judgment or final order as those terms are used in Section 13459-1, General Code, and the Constitution; that the order constituted a sentence and judgment within the purview of Section 13459-4, General Code; and that the motion to dismiss the appeal should be overruled.

Proceeding to consider the error assigned upon appeal, we find that in the charge the court, pursuant to the mandate of the statute, read the definition of reasonable doubt and then proceeded to further define the term. In concluding his charge on the subject, he stated, "if you are not so fully satisfied but find there are only strong probabilities of guilt, your only safe course is to acquit," instead of telling the jury that in such event it was its bounden duty to acquit the defendant. In as much as the Legislature has defined reasonable doubt and in no uncertain terms requires the court to give such definition to the jury, no purpose is to be gained by the court endeavoring to amplify or re-emphasize the definition. Since the quoted language is somewhat contradictory of the statutory definition, it is error prejudicial to the defendant.

The defendant was charged specifically with inde-

cent exposure and felonious assault, which is the statutory definition of the offense of indecent exposure. The statute does refer to taking indecent and improper liberties with the person without intending to commit rape, but there was no charge that defendant took indecent and improper liberties with the person of the complaining witness, and there was no evidence whatsoever to support such charge. However, the court proceeded to say:

"Now what constitutes indecent and improper liberties? It is probably impossible for me to make this much plainer than these words imply. Improper liberties, indecent exposure, those expressions are such as in the common sense of society appear to be just what they say, indecent and improper. These are things that would shock the moral sense of a properly constituted person and be repulsive to the moral sense of the average citizen.

"Now, there is no particular definition given by this law of what constitutes this crime. It is all up to your common sense as members of this community as to what is meant by indecent propriety or morality, or, we might say the standard which most people who live here entertain, so you apply that from your own experiences and then determine from your experience as citizens whether this conduct falls within that definition."

Under subdivision 7 of Section 13442-8, General Code, it is the duty of the court to separately and definitely state to the jury the issues it is to try, accompanied by such instructions as to each issue as the nature of the case may require. *Harrison* v. *State*, 112 Ohio St., 429, 457, 147 N. E., 650, affirmed, 270 U. S., 632, 70 L. Ed., 771, 46 S. Ct., 350. The injection of this extraneous issue into the charge constituted an error of commission and was prejudicial to the defendant. Furthermore, in the event the court undertakes

to comment upon the subject, it is his duty to define the term and not leave the matter for the jurors to determine from their own experiences and personal ideas of morality. The only point in saying anything is to apprise the jury of the legal meaning of the term. The error is not saved by Section 13449-5, General Code. It therefore affirmatively appears that the accused was prejudiced by the misdirection of the jury.

The order committing the defendant to the Lima State Hospital is therefore reversed, and the cause is remanded to the Court of Common Pleas for a new trial.

*Judgment reversed.*

CONN and SAVORD, JJ., concur.