THE STATE OF OHIO, APPELLEE, v. FORTE, APPELLANT.

[Cite as State v. Forte (1971), 29 Ohio App. 2d 24.]

(No. 11502—Decided July 26, 1971.)

*Mr. Simon L. Leis, Jr.,* and *Mr. Fred J. Cartolano,* for appellee.

*Mr. Robert H. Davis,* for appellant.

SHANNON, J. This is an appeal upon questions of law from the judgment entered upon a verdict, and sentence imposed thereupon, in the Court of Common Pleas of Hamilton County.

Appellant, Robert Forte, was indicted jointly with one William Ross Bradley, Jr., for violation of R. C. 2901.-38 (blackmailing). They were tried jointly and it is from the jury verdict finding both to be guilty that this appeal derives.

The evidence, concededly, is uncontradicted that on May 29, 1970, the defendants went to a residence within

Hamilton County, Ohio, and held a conversation with a woman and her husband. Concealed within the building at that time were police officers who both observed the defendants and heard the statements made by the parties.

At intervals during the 12 months preceding May 29, 1970, anonymous telephone calls had been received at the residence and police authorities were notified of such. On May 28, 1970, a call was made stating that unless $25,000 was paid, the father of the woman would be killed, that a "contract was out" for his death, but that the "contract" could be bought for $1,000. A similar call was made on the morning of May 29th and monitored by police. The caller was told to come to the house to complete arrangements. When the defendants arrived they asked for $1,000, eventually agreed to take $290, part of which was given with marked money, in exchange for which they signed a writing agreeing not to harm the woman's father. The defendants were arrested when they left the residence.

Appellant assigns five errors: That the trial court erred in admitting certain evidence relative, for the most part, to the identity of the individual making calls prior to May 29, 1970; that the prosecution had failed to make a prima facie case; that the statute is so vague as to be unconstitutional; that the appellant was entrapped; and that the court erred in defining reasonable doubt to the jury.

We have examined the bill of exceptions and find therefrom that the first two errors assigned are not well taken.

Our conclusions are the same as to the third and fourth assignments. Appellant argues that the word "threat," as used in R. C. 2901.38, fails to establish a definite and certain standard of conduct, and attempts to equate the acts of defendant with those of men who bargain collectively in labor negotiations and professional athletes seeking salary increases. The word "threat" is, in our opinion, commonly understood to mean the expression of an intention to inflict injury on another. Webster's New International Dictionary, Second Edition, Unabridged. Add to a threat, as here to kill a person, a *mens rea*, and it clearly becomes a crime within the purview of the Code section

upon which the indictment was drawn. The state of mind of appellant, that is, the existence of a *mens rea,* was for the jury to decide in determining intent and the testimony and evidence fully support the conclusion that the threat in the case at bar was one proscribed by the statute.

The defendants were not entrapped. Entrapment is the improper inducement to commit a crime, the gist thereof being that the entrapper instigated the offense and then incited the accused to commit it for the purpose of prosecution. See 15 Ohio Jurisprudence 2d 740, Criminal Law, Section 325. Nothing before us demonstrates the availability of such defense to the appellant. On the contrary, it is beyond doubt that the scheme originated with him and his cohort and the police were but observers when the criminal act was committed.

The fifth assignment of error questions the propriety of the comment of the trial judge in his charge after giving the jury the statutory definition of reasonable doubt.

The Court of Appeals for Jackson County considered G. C. 13442-3, the predecessor of R. C. 2945.04, in the cases of *McGoon* v. *State* and *Weston* v. *State* (1931), 39 Ohio App. 212. In paragraph one of the syllabus therein we find:

"General Code, Section 12442-3, providing that in charging a jury in a criminal case the court shall state the meaning of presumption of innocence and read the statutory definition of reasonable doubt, does not restrict the court to reading the statutory definition; and the giving of correct additional instructions amplifying such definition is not error."

The Court of Appeals for Huron County, in the case of *State* v. *Theisen* (1952), 91 Ohio App. 489, decided that a charge on reasonable doubt should be confined to the statutory definition. There, the trial judge read the statute but commented, "if you are not so fully satisfied but find there are only strong probabilities of guilt, your only safe course is to acquit." In holding that the quoted language contradicted the statutory definition and was prejudicially erroneous, the court observed that no purpose is

to be gained by an endeavor to amplify or re-emphasize the definition.

In *State* v. *Stubbs* (1958), 107 Ohio App. 382, the Court of Appeals for Cuyahoga County reversed a judgment as contrary to law, citing *State* v. *Theisen, supra.* In *Stubbs,* the trial judge after reading the statutory definition instructed the jury that if ''you are not satisfied beyond a reasonable doubt, but find only strong probabilities of his guilt, your only safe course is to acquit.'' The Court of Appeals characterized the explanation, beyond the statutory definition, of reasonable doubt as ''entirely unnecessary'' and a ''work of supererogation.''

In the case at bar, the trial judge read the definition of reasonable doubt set forth in R. C. 2945.04, but added:

''Now, I am permitted to comment on that. What it says in essence is simply that you can always conjure up a doubt. You can always say black is red or grey is pink or something.

''It is not that type of doubt. You have to have an abiding conviction to a moral certainty, which means that you must feel in your heart the truth of the charge. If you don't feel that, in all the elements as I will define it to you, then you must find the defendants not guilty. If you have an abiding conviction to a moral certainty *or you feel that it is correct,* then it is beyond a reasonable doubt.'' (Emphasis ours.)

Using the standard established in *Stubbs* and *Theisen, supra,* we conclude that the amplification of the statutory definition attempted was contrary to law. Beyond peradventure, a ''feeling'' that the accusation is ''correct'' cannot be equated with the mandate of law that the jurors must ''feel an abiding conviction to a moral certainty of the truth of the charge.''

Believing and deciding as we do that an explanation of the meaning of reasonable doubt beyond that set forth in R. C. 2945.04 is unnecessary, we find that the comments of the court below amplifying the statutory definition constituted error prejudicial to the appellant.

For the foregoing reasons, the judgment of the Court

of Common Pleas is reversed as contrary to law and the cause is remanded for a new trial.

*Judgment reversed.*

HESS, P. J., and YOUNG, J., concur.